Mr. Duesenberg, do you give the volume discount to your clients so your rates are lower? You're going to be here the rest of the session. I need to ask for a raise, Your Honor. Good morning, Your Honors, and may it please the Court. Michael McGill on behalf of the appellant, Steve Trujillo. I was listening intently a few minutes ago to the Alhambra case that the Court just heard, and it struck me as somewhat similar to this case because I believe it involved a decision of the district court that may or may not have fully articulated the justification or the basis for its decision. And I think that's kind of what we have here. The district court's case, or the ruling I should say, indicated, and this is, and I'm going to read it to the Court because it's important, but it's the entire rationale. Quote, the jury clearly decided emotional damages Trujillo was entitled to based not only on the effects for the failure to promote in the years 2003-2004, but also into the future. And this is on page 121 and 122 of the record. It went on to say, quote, such a finding is mandated by the interplay between instruction number 12 and the jury's response to question number 5. I look at the word interplay and I think that's a very curious choice of words because I think this is when the Court kind of got creative. There is absolutely nothing in the record to indicate that there's any type of interplay between instruction 12 and question 5, other than the fact that they were both given to the jury. Let me ask you a question. Did the jury award a number that was submitted to them by stipulation that assumed that your client was never going to be promoted again? The jury submitted an economic award, a stipulated economic award, that was based on question number 5, which was will Trujillo ever be promoted. That question was given to the jury at the agreement of the parties based strictly on the entitlement to economic damage. So he's been awarded, at least, and this is what I'm ultimately getting at and what I'm wrestling with is how are you going to try this case the second time? You've got the economic damages, and that assumes you're not going to be promoted to lieutenant, notwithstanding the fact that your client is first in the exams and so forth. So he's not going to be exempt. But you've still got non-economic damages that would be perhaps enhanced by the additional testimony about the surveillance and so forth, correct? Well, the additional testimony, there's subsequent adverse actions. The net effect of the district court's ruling is that Steve Trujillo can never be promoted despite all of his efforts for the rest of his career at the City of Ontario, and it can be clear and decisive retaliation, but yet he doesn't have any recourse. He can't do anything about it. Well, I mean, the problem is apparently they've paid for that right. They've paid the economic damages. Okay. So they're not going to promote you anymore and you don't get any damages for it and that's a curious outcome. And am I right in thinking that you've got a right every time you get passed over for a promotion, notwithstanding the fact that you've already been compensated just based on that assumption alone, that a new cause of action for non-economic damages would be triggered? Well, respectfully, Your Honor, Sergeant Trujillo was compensated for his economic damages, the out-of-pocket loss that he sustained and will sustain by not being promoted, but he was not compensated for the emotional damages. I understand, but every time he can, if he keeps applying for a promotion and he doesn't get it and he's already been compensated because the world assumes he's never going to get promoted, he then has a separate lawsuit each and every time he applies and is turned down and it's going to be based on non-economic damages. Is that the kind of serial litigation we're headed for? Absolutely not, because that's sort of an incomplete picture. If it could be proved that he was not promoted each and every time afterward out of retaliation for his speech activities, then he would have subsequent lawsuits. Even though there may not be any new speech activity. It's only limited to text messaging and the surveillance in the locker room. Well, theoretically, yes. If he did something 20 years ago that is being held against him... You're going to get a volume discount on your rates, too. We haven't been paid for this case. I understand. I vote. And I think the important aspect is to really acknowledge the origination or the origin of jury instruction or jury question number five, which is the question that asked the jury, will he ever be promoted? Mr. Deasonhouse came to me and wanted a stipulation. He was going to file a motion in limine to preclude any evidence of anything having to do with Trujillo 2, the second lawsuit. That's because presumably the retaliation would give rise to additional damages. Absolutely. That's why he wanted it. He didn't want the jury to consider it. Absolutely, which is what we were in agreement with. We waited, and we wanted to have the second lawsuit litigated independently. So the damages for the failure to promote in June 2004, which was the subject of this particular lawsuit, was going to be tried separately. So is the trial as to the June retaliation going to be limited to the surveillance, or is it going to tell the whole story all over again, and how are you going to deal with the fact that you've already been compensated for the economic damage? Well, first of all, we wouldn't place at issue the economic damages. We would only place at issue the emotional damages that he would have sustained for that particular failure to promote, as would be the case for any subsequent failure to promote. We're not asking for damage he's already been paid for. It's just strictly what he has not been paid for. So the trial is going to be Trujillo I plus Trujillo II. Well, it's not just a matter of adding more stuff on. There's differences between the two. Didn't Trujillo II complain, just stack him? Well, there's certain separate incidents. Trujillo II involved the video lawsuit, the case that the court just heard, the disclosure of that particular fact. And also the case that Trujillo I involved was the initial major monitoring, the disclosure of the pager monitoring. So, yeah, there's two. Well, repeat all that testimony and go and add the surveillance. Basically, you're going to have that in the can, ready to go every time he applies for a lieutenant and is turned down, right? Is that the way the world's going to work? Probably, but I don't know that it's that simple. There's going to be differences in every trial. But, yeah, that would be the substance of the testimony that would be presented to any subsequent jury. But the bottom line is that this particular case was entirely separate and distinct from Trujillo I. In Trujillo I, we didn't present any of the evidence. The jury didn't hear that he was not promoted in June 2004. They didn't hear any evidence of any of the pain and suffering based on that. I hear you, and I tend to agree with you on the race judicata thing. I'm looking at the real-world practicalities of going forward, and I wouldn't want to be the trial judge. Well, could you handle that by stipulating to the facts that were found in Trujillo I? Oh, I'm sure there's, yeah, lots of ways we can do that, agree to facts, stipulate to evidence, all kinds of things. I don't envision it being a lengthy trial as Trujillo I was. There's always shortcuts and ways to handle that. But I think one particular point that I definitely want to make is that, as I've stated, the evidence that is important to Trujillo II wasn't placed in the record in Trujillo I because of the defense counsel. They're the ones who came to us and said, let's separate these cases out. And then when we came down to litigating and getting ready to litigate and doing the pretrial docs and stuff on Trujillo II, they didn't raise an issue because they knew that we were just going to go about business as usual. The court, on its own, found a way to apparently decide that all of the damages had been accrued. How does the remitter play into this? The judge reduced the amount that the jury awarded in non-economic losses. Correct. The court conditionally granted a motion for a new trial based on plaintiff's acceptance of a remitter of the emotional damages from $1 million to $125,000. So his non-economic damages were already reduced. Absolutely, dramatically, from $1 million to $125,000. And, in fact, that's a point that I made in the brief was that the court's decision on that motion for a new trial sort of conflicts with its decision to dismiss this case because the court pointed out in the ruling on the motion for a new trial that there was no evidence on the temporal parameters of plaintiff's suffering. Unlike economic damages, which continue for as long as plaintiff is not promoted, plaintiff has now been vindicated by this jury and there is no evidence as to how and what extent any emotional damages would continue. So the court recognized that there was no evidence that he would suffer emotional damages based on the fact that he would never promote, but still concluded that those damages were assessed by the jury in Trujillo 1. All right, thank you. Thank you. Your Honors, the first trial, jury instruction number 12, told the jury to award damages for emotional distress for that distress which had already occurred and for that which was reasonably certain to occur in the future as a result of the finding that he had had his rights violated because the department had failed to promote him. I don't think it necessarily matters for our purposes why he failed to promote. The jury did assess those damages. He was awarded damages of $237,890, I believe, pursuant to stipulation, which were all of the benefits past, present, and future. Is he still working at the Ontario Police Department? He sure is. Has he subsequently applied for promotion? Yes. Since the Trujillo 2 facts? I don't know if he most recently applied, but I believe he has subsequently applied after Trujillo 2 was filed. He is still in his capacity as a sergeant. There's an indication he may retire, but who knows when that will be. But the jury awarded him everything he could possibly lose, including lost retirement benefits, based on the stipulation. So there are no more economic damages, regardless of how many bites at the apple he would get. But what about the emotional costs and non-economic damages? Well, presumably, whatever the reason, the non-economic damages flow from the failure to promote. Does it matter why he fails to promote? The jury was told in the first trial... To me, it seems like your career is in the Ontario Police Department as a sergeant, and you scored the highest of anybody else who's competing for this promotion, and you're not promoted because of something that you did that you thought was right. I could see someone getting sick over that, having other types of issues, different kinds of emotional responses than what occurred the first time around. Well, that was the first time around. The first time around, he was the highest-scoring candidate and was passed over for promotion, and that was related to the case that went to trial. The second suit involves a different promotional exam for which he was not the highest-scoring candidate. So doesn't that remain to be litigated, then, whether there was, in fact, retaliation which caused him further emotional damage or other kind of damages? Well, again, I'm trying to understand how, if the right that's lost is the right to promote, he's already been compensated economically. He's already, by the first jury's findings, the first jury found he would never promote. Has he ever been a victim of retaliation for something? I mean, there's a different thing than just each time you're stuck working in that same place with having it increasingly clear that maybe you're shunned or ostracized. And I suspect that, you know, when the court reduced the award, it reduced the award based on the amount of time that plaintiff and plaintiff's counsel spent discussing the non-economic damage component of the award. It's not at all unfair of the court to do that, to reduce that damage award and then preclude him from seeking compensation from a new event that occurred. Well, the court took the position that in order to justify a non-economic damage award of a million dollars, you needed far more significant testimony as to the nature and extent of that claimed damage. When the testimony consisted of less than a page without any supporting psychiatric testimony, I'm sure the court felt that even based on that record, it was a stretch to get to $125,000. Well, I like and respect Judge Larson very much. In fact, he worked for me at O'Malbany and was at AUSA when I was a district court judge. But there seems to be a little bit of unfairness going on here. Unfair in what sense, Your Honor? To force him to take less in damages in the first trial and then preclude him from having the second trial. Well, let's put it this way. You may be making an assumption that at the time he issued the conditional new trial order, he was aware of the second case. There's no indication in the record. Maybe it wasn't unfair then on his part. Maybe it's just unfair now for the city to be resisting that, fully compensating him. Well, I think the real issue for Judge Larson was when he did trial number one, was the evidence sufficient to justify an award of a million dollars? He thought the answer to that was unequivocally no. Obviously, plaintiff could have gone through a new trial. He chose not to. He accepted the award. But when you come back several months later, after the award has been paid and you're now made whole, and you come back and say, I want to try the first case again, plus the second case. My economic damages have been paid for, and I've already received $100,000 for my emotional distress. But as a practical matter, you're not going to really try the first case. You're going to stipulate to that. We shouldn't try the first case at all because the second case shouldn't involve the first case. Why should it? The retaliation, allegedly, he's already been compensated for the pager retaliation. That's what the first trial was about. Isn't punitive damage also in play as a possible award? And isn't the cumulative effect of Ontario Police Department's conduct relevant to a jury in terms of what they might decide to do with regard to punitive damages? I suppose theoretically it is. The participants are different, for sure. The Ontario Police Department is going to be a full employment act for you. It's turning out that way. Let's hope not. Certainly Sergeant Trujillo and the department have a litigation track record. But it seems to me that given the way Sergeant Trujillo chose to file this, these failures to promote occurred within four months of each other. You know, I would be sympathetic to your argument if it weren't for the e-mail. And there was a suggestion. It came from the defense. Let's carve this up. You agreed to carve it up. Everybody knows that you can waive race judicata. A party can waive race judicata. And the judge says on his own motion, not on your motion, that we're done here. We've done everything that we can possibly do. But it seems to me that the first element of race judicata is probably missing here, and that is this really is a distinct claim. It's a distinct claim for a separate hiring decision that was made and for separate and additional reasons for, allegedly, for the retaliation. And the fact that there are sneaky peek cameras going on in the locker room may actually be an enhancement to the plaintiff in terms of a punitive damage claim, it seems to me. So it's hard to say that all of the relief available to Mr. Trujillo has been heard by a jury that he's had his day in court when he essentially agreed to go to trial with one arm behind his back. Well, no, it was actually he who put the arm behind his back because he chose to file two separate cases. They could have been consolidated. No question. And the real question is, how do you try an issue that relates to a second lawsuit not yet heard in a case that is specifically predicated on a single retaliatory motive? Aren't you making the point that it's a separate claim? It's a separate lawsuit? You thought it was a separate lawsuit? It was until... Were you contending when you sent the email to, if you lost and he got compensated, that there would be some knockout punch that would come later to eliminate Trujillo too altogether? No, the reality is that the way the jury verdict form was created, the way the jury was instructed, and that was more crafting of Judge Larson's than anyone else. The way everything was set up, it was clear that the jury was told if he fails to promote, his economic damages are X, which the parties have stipulated to, and depending on the level of proof, you're permitted to return a verdict for him for past non-economic loss and future non-economic loss, emotional distress, predicated on the fact that he's never going to promote. And that's why the jury did what they did. Judge Larson didn't look to see, well, is there something wrong with the one versus two lawsuits? But when he ruled on the motion for a new trial, was there evidence to support that million-dollar award? And he concluded there wasn't. So no, I don't think there's anything unfair. I'll submit it. Thank you. We don't have any time left. Yeah, yeah, it's getting late. Let's sneak up to the third one. Yeah, we understand. Okay, now we come to
judges: Pregerson, Wardlaw, Leighton